The REUBEN H. DONNELLEY CORPORATION, a Delaware Corporation, Appellant,

v.

Thomas R. McKINNON d/b/a Busted 5 Ranch, Inc., Appellee.

No. 13–84–117–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 10, 1985.

Rehearing Denied Jan. 31, 1985.

Rehearing Overruled Feb. 21, 1985.

**614**

Wallace P. Finrock, Dallas, for appellant.

Craig H. Vittitoe, Harlingen, for appellee.

## OPINION

PER CURIAM.

On December 1, 1981, appellee, Thomas R. McKinnon, purchased from Albert A. Connell a franchise business known as Thrifty Rent-A-Car. In several discussions prior to the sale, McKinnon had inquired about and was assured by Connell that advertising had been secured in the upcoming year's Yellow Page Directory. Connell had exhibited an order form contract, signed September 28, 1981 by Thrifty Rent-A-Car's then general manager with Reuben H. Donnelley (hereinafter R.H.D.), for a triple half-column ad in the Rio Grande Valley Directory to be published in February 1982. No payment was due until the advertisement appeared. The ad failed to appear. McKinnon ultimately sued Albert Connell and R.H.D., alleging negligence and violations of the Texas Deceptive Trade Practices Act, Texas Business and Commerce Code, sec. 17.41 et seq. (Vernon Supp.1984). R.H.D. answered that it had cancelled the advertising upon the instruction of the party placing the ad and denied that it had any contractual or other obligation to McKinnon. Connell answered, denying cancellation. Before trial, Connell was dismissed as a party defendant. Evidence was then presented to a jury which answered twelve special issues. The jury found, inter alia, that Connell did not cancel the Yellow Page advertisement, that R.H.D.'s cancellation was negligent, and that R.H.D. breached its express warranty to McKinnon d/b/a Thrifty Rent-A-Car to provide advertising. The trial court entered judgment against R.H.D. for $212,000.00 plus attorney's fees.

R.H.D. brings forward thirteen points of error. Appellant's first, second and fourth points of error are all based on the premise that R.H.D. had no contractual relationship with McKinnon. We disagree.

As noted earlier, Thrifty Rent-A-Car's general manager entered into a contract for the advertisement on September 28, 1981, shortly before the directory's October 9 closing date. About two months after the advertising order was placed, and after the directory's closing date, but before the publication date, Connell and McKinnon contracted for the sale of the franchise business known as Thrifty Rent-A-Car. Appellant does not assert on appeal that the advertisement contract was not "transferred" by the contract for sale of the franchise; his argument is that the transfer was unauthorized, that appellant had no notice of it, and that, therefore, the transfer was ineffective to cause appellant any obligation to appellee. Appellant characterizes this transfer as an assignment, points to the following provision in its order form contract with Connell and asserts that the order was not assignable:

12. This agreement shall inure to and be binding upon the successors and assigns of the parties hereto; provided, however, that it shall not be assigned

without the prior written consent of RHD.[1]

■ Appellee, for his part, characterizes the transfer as a succession and asserts that the above provision is inapplicable to this case. We find, for the following reasons, that the label descriptive of this transfer is not critical to the outcome of the case and that, under the circumstances of this case, RHD had a contractual obligation to provide yellow page advertising to the Thrifty Rent-A-Car franchise.

If appellee is classified as a "successor," the requirement of written consent to make the transfer effective would be inapplicable, and, therefore, the transfer would be valid. The result, however, is no different if appellee is classified as an "assignee," because the contract term only forbids assignment; it does not render an assignment ineffective. *See* Restatement, Second, Contracts § 322(2) which provides, in part:

> A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,
>
> (b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective.

Similar provisions, although limited in scope, are contained in the Texas Business and Commerce Code. *See* §§ 2.210; 9.104(6) and 9.318(d). *See also Gips v. Red Robin Corporation*, 366 S.W.2d 853 (Tex. Civ.App.—Houston 1963, writ ref'd n.r.e.). Accordingly, we disagree with appellant that it had no contractual duty to provide advertising to McKinnon's Thrifty Rent-A-Car. Appellant's first, second, and fourth points of error are overruled.

In his third point of error, appellant argues that, even if a contract did exist between appellant and appellee, the trial court awarded excessive damages as the order form contract provided that in the event of "any error or omission in the publication of or failure to publish any item ... the liability of RHD ... shall be limited to the charges for the publication in such directory of the item of the advertising involved...." Appellant cites *Wade v. Southwestern Bell Telephone Co.*, 352 S.W.2d 460 (Tex.Civ.App.—Austin 1961, no writ) for the proposition that these limiting clauses for errors and omissions are valid and enforceable. *Wade*, however, was an action for breach of contract rather than negligence or deceptive trade practices. There are several Texas cases where contractual provisions limiting damages have not been enforced. For example, in *De-Kalb Hybrid Seed Company v. Agee*, 293 S.W.2d 64 (Tex.Civ.App.—Beaumont 1956, writ ref'd n.r.e.), an order form for baby chicks contained a clause limiting the seller's liability to the price of the chicks. The Court of Civil Appeals held that the buyer's measure of damages was not limited to the purchase price where his cause of action was for fraud (an intentional tort) rather than for the rescission of the contract. *See also F.H. Woodruff & Sons v. Brown*, 256 F.2d 391 (5th Cir.1958); *Andrews v. Powell*, 242 S.W.2d 656 (Tex.Civ.App.—Texarkana 1951, no writ). Recently, this Court was presented with the same issue, but, because of the disposition, was not required to address whether recovery for lost profits is foreclosed by a contractual limitation of liability. *See Goldson v. Southwestern Bell Telephone Co.*, 659 S.W.2d 902 (Tex.App.—Corpus Christi 1983, no writ). In addition, the Texas Supreme Court was not required to decide that issue in *White v. Southwestern Bell Telephone Company, Inc.*, 651 S.W.2d 260 (Tex.1983).

---

**1.** Contracts transferred in the course of a sale of business have been treated as assignments. *Linen Service Corporation of Texas v. Myres*, 128 S.W.2d 850 (Tex.Civ.App.—Galveston 1939, no writ). The term "successor" is apt and appropriate to designate one to whom property descends. When applied to corporations, the term does not normally connote an assignee, but includes corporations becoming invested with the rights and assuming the burdens of another corporation by amalgamation, consolidation, or duly authorized succession. *International Association of Machinists, Lodge No. 6 v. Falstaff Brewing Corporation*, 328 S.W.2d 778 (Tex.Civ. App.—Houston 1959 no writ).

We now address that issue. Appellant contends that similar provisions have been upheld in sixteen states and should be upheld in Texas. *See McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.*, 95 Ill.2d 68, 69 Ill.Dec. 183, 447 N.E.2d 400 (1983), where the Illinois Supreme Court lists those jurisdictions upholding the validity of such provisions. More recently, however, the Wisconsin Supreme Court, in a negligence case, held unenforceable a limiting provision similar to the one in this case. *Discount Fabric House v. Wisconsin Telephone Company*, 117 Wis.2d 587, 345 N.W.2d 417 (1984). *See also Thomas v. General Telephone Directory*, 127 Mich.App. 788, 339 N.W.2d 257 (1983). For reasons stated in these cases, we hold that appellant may not limit its liability for negligence. Appellant's third point of error is overruled.

[4] In his fifth point of error, appellant argues that the trial court erred in submitting special issues based on negligence, because the appellee's rights, if any, were based on contract. Cases similar to this one have been brought on negligence theory. *See Discount Fabric House v. Wisconsin Telephone Company*, 117 Wis.2d 587, 345 N.W.2d 417 (1984); *Southwestern Bell Telephone Company v. Reeves*, 578 S.W.2d 795 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Thomas v. General Tel. Directory Co.*, 339 N.W.2d 257. Appellant's fifth point of error is overruled.

In his sixth point of error, appellant contends that McKinnon was not a consumer under the Deceptive Trade Practices Act. *In Bancroft v. Southwestern Bell Telephone Company*, 616 S.W.2d 335 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ), the Houston Court of Appeals held that Bancroft was not a consumer because he did not pay for and was not charged for the advertisements which were omitted from the Yellow Page directory. We choose not to follow *Bancroft*, finding it in conflict with our holding in *McCrann v. Klaneckey*, 667 S.W.2d 924 (Tex.App.—Corpus Christi 1984, no writ). Appellant's sixth point of error is overruled.

In his seventh point of error, appellant complains of the trial court's award of damages. Although appellant has incorporated essentially two different points of error under this one point, we will address both arguments as each concerns the trial court's award of damages.

As noted above, twelve special issues were submitted to the jury. The first three concerned appellee's negligence claim through which the jury found that appellant's negligence caused appellee damages of $70,006. Issues four through ten concerned appellee's claim under the D.T.P.A. The jury found that appellant breached an express warranty to appellee and (under special issue number seven) that such conduct was a producing cause of damages to appellee. When the jury answered special issue number eight, which had been tied to its affirmative answer of issue number seven, it refused, however, to award appellee actual damages. Continuing through the succession of issues, the jury was instructed to answer special issue number ten (concerning additional damages) only if it had answered issue eight "yes" and only if the breach of the warranty had been committed knowingly. The jury, however, chose to answer special issue ten and determined that $140,000 was the amount of additional damages.

The trial court's judgment was against appellant for the amount of $212,000, plus attorney's fees; the judgment fails to explain how the trial court arrived at this amount. Appellant argues that the trial court should not have awarded appellee any additional damages in this case, the jury having found no actual damages under the D.T.P.A. claim. Appellee contends that the award of $70,006 under the negligence action is sufficient to show actual damages and argues that the additional damages should be sustained. We disagree with appellee's position.

The trial court's submission of the damage issues followed the holding in *Lucas v. Nesbitt*, 653 S.W.2d 883 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.)

wherein this Court held that it was reversible error for the trial court *not* to submit separate issues on negligence damages and D.T.P.A. damages, because failure to submit the damages issues in that form prevents the trial court from knowing what portion of the damages were attributable to each cause of action. In the present case, the jury found that appellee should be awarded no damages as a result of appellant's violation of the D.T.P.A. Since special issue number ten (additional damages) was tied exclusively to the D.T.P.A. cause of action, and since additional damages will not be awarded in the absence of actual damages, *City Products Corp. v. Berman*, 610 S.W.2d 446 (Tex.1980), appellant's assertion that the trial court erred in apparently awarding $140,000 in additional damages to appellee is meritorious.

■ Appellant also argues that the evidence is insufficient to show that appellee suffered $70,006 in lost profits. Appellant contends that, in spite of expert testimony which established lost profits at that amount, the evidence remains too speculative to determine damages with a reasonable degree of certainty. We note that appellant's brief in this regard is quite brief and contains no authority. We have, however, reviewed the sufficiency of the evidence which was presented through the testimony of two expert witnesses and members of the McKinnon family.

Professor Carl Rush, director of the Bureau of Business and Economic Research at Pan American University testified that yellow page advertising was important to Thrifty Rent-A-Car because of the character of its car renters, whom he described as largely first-time customers who rely on the phone directory to pick a rent-a-car agency. Rush explained that, based on figures furnished by McKinnon, he estimated that Thrifty lost gross revenues of $107,194.00 as a result of no yellow page advertising. Wayne Beneke, a Certified Public Accountant, testified that, based upon his research, Thrifty Rent-A-Car would have made $70,006 in additional profits from February 1982 to January 1983 if its gross revenues had been $107,000.00 higher.

Appellant argues that any comparison to increased revenue after February 1983 "is not proper nor relevant because it included business from lots in Brownsville and McAllen that were not in existence during earlier years" and that part of the increase after February 1983 was due to a government contract. The record does not support appellant's assertions. McKinnon specifically testified that he had the government contract in the year when Thrifty did not have yellow page advertising. The record also fails to show that additional "lots" were opened in Brownsville and McAllen which might have altered the figures used by the experts in determining lost profits. To the extent that appellant's seventh point of error challenges appellee's showing of lost profits, it is overruled. To the extent which it challenges the award of additional damages, it is sustained.

■ Appellant's eighth point of error challenges the trial court's award of attorney's fees. We agree with appellant that the trial court erred. In the absence of judgment for actual damages under the D.T.P.A., an award of attorney fees cannot stand. *Freedom Homes of Texas, Inc. v. Dickson*, 598 S.W.2d 714 (Tex.Civ.App.— Corpus Christi 1980, writ ref'd n.r.e.). Appellant's eighth point of error is sustained.

In his ninth, tenth, eleventh, twelfth and thirteenth points of error, appellant contends that various issues should not have been submitted to the jury due to insufficient or no evidence. These points contain no authority, no citation to the record, and no argument. Points of error not supported by argument and authority are waived. *Campion v. Hochheim Prairie Farm Mutual Insurance Assoc.*, 644 S.W.2d 795 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Tex.R.Civ.P. 418. *See La Sara Grain Company v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex.1984) (Opinion on Motion for Rehearing). These points are overruled.

The judgment of the trial court is affirmed in part and reversed and rendered in

part. That part of the trial court's judgment in favor of the appellee in the amount of $70,006 on his negligence action against appellant, R.H.D. is AFFIRMED. The remainder of the trial court's judgment is REVERSED and JUDGMENT RENDERED that appellee take nothing on his D.T.P.A. cause of action or his claim for attorney's fees. Costs are adjudged fifty percent against appellant and fifty percent against appellee.