**FOX ELECTRIC COMPANY, INC., Fox Electric Company, Inc. d/b/a Park Row Lighting, and James P. Tanton, Appellants,**

v.

**TONE GUARD SECURITY, INC. and Advanced Protection Services, Inc., Appellees.**

No. 2–92–261–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 30, 1993.

Rehearing Overruled Oct. 5, 1993.

---

Payne & Blanchard, Mark B. Greenberg, Dallas, for appellants.

Fulbright & Jaworski L.L.P., Thomas W. Gray, Dallas, for appellees.

Before FARRIS, LATTIMORE and WEAVER, JJ.

## OPINION

LATTIMORE, Justice.

Appellants, Fox Electric Company, Inc., Fox Electric Company, Inc. d/b/a Park Row Lighting, and James P. Tanton (Fox Electric Company, Inc. and Fox Electric Company, Inc. d/b/a Park Row Lighting will be referred to as "Fox Electric" while all collectively will be referred to as "Tanton/Fox") appeal a summary judgment entered in favor of Tone Guard Security, Inc. ("TGS") and Advanced Protection Services, Inc. ("APS"), raising five points of error. Specifically, Tanton/Fox contends the trial court erred in granting summary judgment: (1) in favor of APS because APS did not attach to its motion the June 20, 1981 contract referenced in Don Frank Allen's affidavit; (2) in favor of APS because the limitation of liability provision found in the contract at issue does not apply in a negligence cause of action; (3) in favor of APS because the liquidated damage clause in the contract at issue was unenforceable as a matter of law; (4) in favor of APS because paragraph 21 of the contract at issue is unconscionable; and (5) in favor of TGS because a material fact issue exists as to whether Tanton/Fox stated a pre-dissolution cause of action.

We affirm.

Fox Electric contracted with TGS and APS for fire protection services. On October 7, 1985, a fire occurred which caused damages in excess of $500,000 to a building, which was owned by Tanton, and its contents, which were owned by Fox Electric. Tanton/Fox brought suit against TGS, APS and National Guardian Security Services, Inc. alleging negligence, breach of express and implied warranties and misrepresentation. The trial court granted summary judgments in favor of TGS and APS and severed those claims. From those severed summary judgments Tanton/Fox appeals.

In its first point Tanton/Fox argues the trial court erred in granting summary judgment to APS because APS did not attach to its affidavit in support of its motion for summary judgment a contract, which was referred to in the affidavit, and would be the basis for liability. Tanton/Fox maintains the

failure to attach the contract to the affidavit violates rule 166a(d), which provides for the use of discovery products not on file with the clerk's office as summary judgment evidence, if such materials are filed and served on the other parties with notice of intent to use such as summary judgment proof at least twenty-one days before the hearing on summary judgment. TEX.R.CIV.P. 166a(d). The record reflects that Tanton/Fox formally objected to the failure to attach the contract to the affidavit in its response to the motion for summary judgment; however, the record is silent as to any ruling on the objection.

■ The objecting party must obtain a ruling on its objections to preserve error for appellate review. *Hopkins v. Highlands Ins. Co.,* 838 S.W.2d 819, 822 (Tex.App.—El Paso 1992, no writ); *Williams v. Conroe Indep. School Dist.,* 809 S.W.2d 954, 957 (Tex. App.—Beaumont 1991, no writ). Therefore, Tanton/Fox has waived any complaint on appeal. *Hopkins,* 838 S.W.2d at 822 (although defects in summary judgment proof properly objected to, failure to secure ruling effectively waives complaint on appeal). The first point of error is overruled.

In its second, third, and fourth points Tanton/Fox complains the trial court erred in granting summary judgment to APS because paragraph 21 of the contract dated February 26, 1985 between APS and Fox Electric contains a limitation of liability which is not applicable in negligence cases, a liquidated damages clause that is unenforceable as a matter of law, and is unconscionable. The subject paragraph provides:

(21) **APS IS NOT AN INSURER; LIQUIDATED DAMAGES; LIMITATION OF LIABILITY:** It is understood and agreed: That APS is not an insurer; that insurance, if any, shall be obtained by Subscriber, that the payments provided for herein are based solely on the value of the services as set forth herein and are unrelated to the value of the Subscriber's property, or the property of others located on Subscriber's premises; that APS makes no guaranty or warranty, including any implied warranty of merchantability or fitness that the equipment or services supplied will avert or prevent occurances [sic]

or the consequences therefrom which the system is designed to detect or avert. Subscriber acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from a failure to perform any of the obligations herein, including, but not limited to installation, service, maintenance or monitoring or the failure of the system to properly operate with resulting loss to Subscriber because of, among other things:

(a) The uncertain amount of value of Subscriber's property or the property of others kept on the premises which may be lost, stolen, destroyed, damaged or otherwise affected by occurrences which the system or service is designed to detect or avert;

(b) The uncertainty of the response time of any police or fire department, should the police or fire department be dispatched as a result of a signal being received or an audible device sounding;

(c) The inability to ascertain what portion, if any, of any loss would be proximately caused by APS's failure to perform or by its equipment to operate;

(d) The nature of the service to be performed by APS.

Subscriber understands and agrees that if APS should be found liable for loss or damage due to a failure of the installation, maintenance, monitoring, service or equipment in any respect whatsoever, APS's liability shall be limited to a sum equal to the total of six (6) monthly payments or Two Hundred Fifty ($250.00) Dollars, whichever is the lesser, as liquidated damages and not as a penalty and this liability shall be exclusive; that APS shall not be liable for consequential or incidental damages except to the extent of the liquidated damages herein provided; and that the provisions of this section shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to persons or property, from performance or nonperformance of the obligations imposed by this contract, or from negligence, active or otherwise, of APS, its agents, servants, assigns or employees.

If Subscriber wishes APS to assume a limited liability in lieu of the liquidated damages as hereinabove set forth, Subscriber may obtain from APS a limitation of liability by paying an additional monthly service charge to APS. If Subscriber elects to exercise this option, a rider shall be attached to this Agreement setting forth the terms, conditions and amount of the limited liability and the additional monthly charge. Such rider and additional obligation shall in no way be interpreted to hold APS as an insurer.

We will address the limitation of liability issue first. Tanton/Fox maintains the limitation of liability provision contained in the contract is not valid because its cause of action against APS was based in part upon negligence. In support of its position Tanton/Fox cites *Southwestern Bell Tel. v. Delanney*, 762 S.W.2d 772 (Tex.App.—Texarkana 1988), *rev'd on other grounds*, 809 S.W.2d 493 (Tex.1991); *Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (per curiam); *Alpha Mktg., Inc. v. Honeywell, Inc.*, 690 S.W.2d 35 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); and *McCane–Sondock Protection Sys. v. Emmittee*, 540 S.W.2d 764 (Tex.Civ.App.—Eastland 1976, no writ). However, we agree with APS's position that these cases are inapposite. Both *McKinnon* and *Delanney* involve fact situations where the limitation of liability clauses in question do not purport to limit liability based upon negligence, as we have in the present case. *See Delanney*, 809 S.W.2d at 496–97 (Gonzalez, J., concurring); *McKinnon*, 688 S.W.2d at 615. *Alpha Marketing* and *McCane–Sondock* are cases involving burglar alarm contracts, but are also cases where the limitation of liability does not include liability based upon negligence. *See Alpha Marketing*, 690 S.W.2d at 36; *McCane–Sondock*, 540 S.W.2d at 765–66. Both *Alpha Marketing* and *McCane–Sondock* involve a cause of action based upon negligent installation of a burglar alarm, but the limitation of liability clauses assume that the alarm system was properly installed. *Alpha Marketing*, 690 S.W.2d at 36 ("damages which may arise due to the faulty operation of the system or failure of services provided"); *McCane–Sondock*, 540 S.W.2d at 765–66 ("loss to the second party resulting by reason of failure of the performance of the alarm system to operate"). The courts in both cases held the limitation of liability clauses were not enforceable because there could be no "failure of operation" or "faulty performance" unless the alarm systems were installed and operating properly. *Alpha Marketing*, 690 S.W.2d at 37; *McCane–Sondock*, 540 S.W.2d at 766.

In the present case we have a limitation of liability clause that is unlike the above cases and specifically takes into account loss due to negligence as illustrated by the contract's language that "the provisions of this section shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to persons or property, from performance or nonperformance of the obligations imposed by this contract, or *from negligence, active or otherwise, of APS, its agents, servants, assigns or employees.* " [Emphasis added.] Although the primary case upon which APS relies, *Vallance & Co. v. De Anda*, 595 S.W.2d 587 (Tex.Civ.App.—San Antonio 1980, no writ), is a case based upon breach of contract, it contains a limitation of liability clause which is almost identical in substance to the one at issue in this case. *See id.* at 588–89. In addition, the court in *Vallance* states that contractual provisions in alarm service contracts purporting to limit liability have consistently been upheld by the courts and cites to cases from other jurisdictions. *See id.* at 589. One of the cases cited is a Minnesota Supreme Court case in which that court upheld a partial summary judgment for the alarm company where the plaintiff's case was based upon negligence. *See Morgan Co. v. Minnesota Min. & Mfg. Co.*, 310 Minn. 305, 246 N.W.2d 443 (1976). The limitation clause in *Morgan* is also almost identical in substance to the limitation in the instant case. *See id.* at 447.

Moreover, as APS correctly argues, agreements to limit liability for future negligence are enforceable. *Allright, Inc. v. Elledge*, 515 S.W.2d 266, 267 (Tex.1974); *Interstate Fire Ins. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex.App.—Houston [1st Dist.] 1991, writ denied). So long as the agreement does not violate public policy, it

will be enforceable; it will not violate public policy if there is no disparity in bargaining power between the parties. *Elledge*, 515 S.W.2d at 267. Tanton/Fox has not argued any disparity, so we assume there is no question concerning this issue on appeal. Therefore, we hold the limitation of liability clause in the contract in question is enforceable, and it is irrelevant that Tanton/Fox's cause of action was based upon negligence because the clause specifically took into account loss through negligence, and no disparity of bargaining power is at issue. The second point of error is overruled.

In its third point, Tanton/Fox argues that paragraph 21, if found to be a liquidated damage provision, is unenforceable as a penalty. We disagree as we find the *Vallance* decision controlling on this issue. The *Vallance* court, as mentioned earlier, interpreted a contract provision virtually identical in substance to the one in the case at bar and held the provision to be a valid limitation of liability. *Vallance*, 595 S.W.2d at 590. The court stated: "Although the term 'liquidated damages' is used in the contract, the provision clearly limits liability to the amount of the service charge for six months." *Id.* Thus, we find likewise and hold paragraph 21 of the contract to be a valid limitation of liability and not a liquidated damage provision. Therefore, a penalty analysis is unnecessary. Point of error three is overruled.

In its fourth point, Tanton/Fox maintains that whether the clause is a limitation of liability or a liquidated damage clause, it is unconscionable. Again, we find the reasoning employed in the *Vallance* decision persuasive. The court reasoned:

> In the absence of a controlling public policy to the contrary, contracting parties can limit their liability in damages to a specified amount. Furthermore, it is immaterial whether a limitation of liability is a reasonable estimate of probable damages resulting from a breach. Consequently, limitation of liability provisions in burglar alarm service contracts have been upheld despite arguments that they are unconscionable or constitute penalties.

*Id.* at 590 (citations omitted). The court went on to elaborate what it thought sound policy reason for enforcing the provision stating:

> Appellee paid a service charge of $24.50 per month to appellant. It would be unreasonable "to expect appellant to assume the responsibilities arising under a burglary insurance policy upon payment of ..." this nominal fee. Had appellee desired greater protection against loss from burglary he could have purchased burglary insurance or paid additional amounts under a graduated scale of rates, as provided in the agreement.

*Id.* (citations omitted). Likewise, in the present case Tanton/Fox paid a nominal fee, $56.00 per month, and was also provided a choice for additional coverage. Therefore, for the reasoning used in *Vallance*, we find paragraph 21 is not unconscionable. Point of error four is overruled.

In its last point Tanton/Fox argues the trial court erred in granting summary judgment to TGS because a material fact issue exists as to whether Tanton/Fox stated a pre-dissolution cause of action. TGS was legally dissolved on February 25, 1985. TGS's assets had been purchased and its responsibilities and duties assumed by APS. The fire in question occurred on October 7, 1985. Tanton/Fox maintains its cause of action was saved by a statutory provision that allows suits against dissolved corporations. *See* TEX.BUS.CORP.ACT ANN. art. 7.12 (Vernon Supp.1993). In particular, the statute provides:

> A. A dissolved corporation shall continue its corporate existence for a period of three years from the date of dissolution, for the following purposes:
>
> (1) prosecuting or defending in its corporate name any action or proceeding by or against the dissolved corporation;
>
> (2) permitting the survival of any existing claim by or against the dissolved corporation;
>
> . . . .
>
> C. A corporation shall not be liable for any claim other than an existing claim. . . .
>
> . . . .
>
> F. In this Article:

**84**

. . . .

(3) The term "existing claim" means a claim that existed before dissolution and is not otherwise barred by limitations or a contractual obligation incurred after dissolution.

*Id.*

Article 7.12 provides remedies for pre-dissolution claims. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 549 (Tex.1981); *Weibel v. Martin Industries, Inc.,* 806 S.W.2d 345, 346 (Tex.App.—Fort Worth 1991, writ denied). Tanton/Fox relies on *Solomon v. Greenblatt,* 812 S.W.2d 7 (Tex. App.—Dallas 1991, no writ); however, this case also involves a claim which arose pre-dissolution. Tanton/Fox's cause of action accrued when the fire occurred, some seven months after the dissolution of TGS, so it can hardly be said that the claim arose pre-dissolution. Moreover, Tanton/Fox had an entity against which to pursue its alleged claim by virtue of APS assuming the duties and responsibilities of TGS. We will not hold that the purpose behind article 7.12 was for the type of situation in this case. Because Tanton/Fox's cause of action arose after the dissolution of TGS, summary judgment in favor of TGS was proper. The fifth point of error is overruled.

The judgment of the trial court is affirmed.