**ARTHUR'S GARAGE, INC. a/k/a Arthur's Mercedes Benz, Appellant,**

v.

**RACAL–CHUBB SECURITY SYSTEMS, INC., Racal Corporation, and Chubb Security Systems, Inc., Appellees.**

No. 05–96–00556–CV.

Court of Appeals of Texas, Dallas.

July 15, 1999.

Kenneth J. Lambert, Middleberg Riddle & Gianna, Dallas, for Appellant.

Sharis L. Hauder, Alan P. Moore, Fanning Harper & Martinson, P.C., Dallas, for Appellee.

Before Justices OVARD, WHITTINGTON, and MOSELEY.

## OPINION

Opinion By Justice MOSELEY.

Arthur's Garage, Inc. a/k/a Arthur's Mercedes Benz (Arthur's Garage) sued Racal–Chubb Security Systems, Inc., Racal Corporation, and Chubb Security Systems, Inc., (Racal–Chubb) for damages it sustained when a smoke detector failed to operate during a fire on the garage premises. The trial court granted summary judgment in favor of Racal–Chubb on the ground that Racal–Chubb's liability was contractually limited to $350. The trial court also granted summary judgment in favor of Racal–Chubb on its claim for indemnity from Arthur's Garage against third-party claims. The trial court held a bench trial on the amount of damages arising from the failure to indemnify. On appeal, Arthur's Garage contends the trial court erred in granting Racal–Chubb's motions for summary judgment and in awarding "expenses" beyond the award of attorney's fees and court costs. We affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

In August 1983, Arthur's Garage, a Mercedes–Benz repair business, contracted with Andrews Alarm Systems, Inc., to transfer and reinstall existing burglar alarm equipment from its old location to a new location. On August 25, 1983, Arthur's Garage amended the contract to include installation of a fire alarm system, which included smoke detectors. Arthur's Garage also contracted with Andrews for monitoring and servicing the entire alarm system. Arthur's Garage continued its contract with Andrews to service and maintain the alarm system until Andrews was acquired by Racal–Chubb in 1989 in a stock-purchase acquisition. After the acquisition, Racal–Chubb continued servicing existing Andrews contracts, including the contracts with Arthur's Garage. According to the summary judgment evidence, Arthur's Garage paid Racal–Chubb fifty-one dollars per month to monitor the alarm system.

On April 13, 1991, a fire occurred at Arthur's Garage. The fire did not set off the smoke detector; however, as the fire grew, it set off the burglar alarm. Arthur's Garage sustained damages of $458,-057.28 to inventory, furniture, fixtures, equipment, and miscellaneous items.

Investigators later discovered that the smoke detector was improperly wired. Arthur's Garage sued Racal–Chubb alleging breach of contract, negligence, breach of implied and express warranties, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). Under its DTPA claims, Arthur's Garage alleged Racal–Chubb made material misrepresentations, breached express and implied warranties, and engaged in an unconscionable course of conduct. Frank LaBarba, the landlord of the burned premises, also joined in the suit against Racal–Chubb. (Arthur's Garage and LaBarba also sued Andrews but later dropped it from the suit.)

Racal–Chubb counterclaimed against Arthur's Garage asserting it was contractually obligated to indemnify Racal–Chubb against LaBarba's claims. After LaBarba voluntarily nonsuited his claims, Racal–Chubb amended its counterclaim and alleged, based on the indemnity provision in the contract, that Arthur's Garage was liable for Racal–Chubb's attorney's fees in defending the LaBarba lawsuit and prosecuting its counterclaim for indemnity.

Racal–Chubb moved for summary judgment against Arthur's Garage on all asserted causes of action contending that:

(1) Arthur's Garage's damages were contractually limited to $350 by a clause in the installation contracts [1] entitled "Liquidated Damages and Indemnification," and (2) Arthur's Garage's claims were barred by the doctrine of successor liability. Racal–Chubb alternatively moved for partial summary judgment on two specific DTPA claims, asserting: (1) Texas law does not recognize an implied warranty to install and/or maintain a fire alarm system in a good and workmanlike manner; (2) Racal–Chubb could not have breached an implied warranty that repairs or modifications of existing tangible goods be performed in a good and workmanlike manner because it never performed any repairs or inspection of the smoke detector; and (3) Arthur's Garage was not aware of any misrepresentations made by Racal–Chubb.

The trial court granted Racal–Chubb's motion for summary judgment on Arthur's Garage's liability claims and awarded Arthur's Garage $350 in satisfaction of all claims against Racal–Chubb. In its order, the trial court specified it was granting summary judgment on the limitation of liability clause in the contract and held that the clause was not a penalty and was therefore enforceable against Arthur's Garage.

Subsequently, Racal–Chubb moved for summary judgment on its remaining counterclaim seeking indemnity for its attorney's fees and expenses incurred in defending against LaBarba's claim. The trial court granted Racal–Chubb's summary judgment motion on liability only and held a bench trial on the amount of attorney's fees incurred. Following trial, the court awarded Racal–Chubb $8,470 in attorney's fees and $952.57 in expenses. This appeal followed.

## CONTENTIONS ON APPEAL

Arthur's Garage contends the trial court erred in granting Racal–Chubb's first motion for summary judgment because: (1) the liquidated damages clause is unenforceable against Arthur's Garage's DTPA claims; (2) Racal–Chubb failed to prove all the elements of its liquidated damages affirmative defense; and (3) the liquidated damages clause is an unenforceable penalty. Arthur's Garage also contends the trial court erred in granting Racal–Chubb's second motion for summary judgment because the indemnity provision does not meet the "express negligence" test or the "conspicuousness" test. Finally, Arthur's Garage contends the trial court erred in awarding "expenses" of $952.57 because expenses are not recoverable as a matter of law.

Racal–Chubb raises two cross-points on appeal. First, Racal–Chubb asserts the trial court erred in denying its motion for summary judgment on the DTPA implied warranty claim because Texas law does not recognize an implied warranty to install and/or maintain a fire alarm system in a good and workmanlike manner. Racal–Chubb also asserts the undisputed summary judgment evidence shows it never performed any repairs or modifications on the alarm system; therefore, it could not have breached any existing implied warranties as a matter of law. Second, Racal–Chubb argues the trial court erred in denying its motion for summary judgment on Arthur's Garage's DTPA laundry list claims because Arthur's Garage did not establish a causal link between the alleged misrepresentations and its damages.

## STANDARD OF REVIEW

In reviewing a summary judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

1. Both installation contracts contain identical provisions.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.[2]

For the defendant, as movant, to prevail on a summary judgment, it must either disprove at least one element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action.[3] We do not consider evidence that favors the movant's position unless it is uncontroverted.[4]

## LIABILITY ISSUES

### A. Limitation of Liability

In its first point of error, Arthur's Garage contends the trial court erred in granting summary judgment limiting Racal–Chubb's liability to $350 on all asserted causes of action. Arthur's Garage specifically contends that: (1) the "liquidated damages" clause is not enforceable against its DTPA claims; (2) Racal–Chubb failed to prove as a matter of law all of the elements of its "liquidated damages" affirmative defense; and (3) the liquidated damages clause constitutes an unenforceable penalty. Racal–Chubb argues that, despite its name, the "liquidated damages" clause is really a limitation of liability and therefore a penalty analysis does not apply. Racal–Chubb also asserts the limitation of liability clause is enforceable against the DTPA claims.

■ The alarm installation contracts between Arthur's Garage and Andrews (assumed by Racal–Chubb) contain the following provision under the title "Liquidated Damages and Indemnification":

It is expressly understood and agreed that seller is not an insurer and that insurance, if any, covering personal injury and property loss or damage on purchaser's premises shall be obtained by the purchaser; that the payments provided for herein are based solely on the value of the system and/or service as set forth herein, and are unrelated to the value of the purchaser's property or the property of others located on purchaser's premises; that seller makes no guarantee or warranty including any implied warranty of merchantability or fitness that the system or service supplied will avert or prevent occurrences or the consequences therefrom which the system or service is intended to detect or avert.

Purchaser acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from a failure to perform any of the obligations herein or a failure of the service and/or system to operate because of, among other things: the uncertain amount or value of purchaser's property or the property of others which may be lost or damaged; the uncertainty of the response time of the police or fire department or other appropriate agency; the inability to ascertain what portion, if any, of any loss would be proximately caused by seller's failure to perform any of its obligations or failure of its equipment to operate; the nature of the services to be performed by seller.

If there shall, notwithstanding the above provisions, at any time be or arise any liability on the part of seller by virtue of this agreement or due to the negligence of seller or otherwise, such liability is and shall be limited to the sum of three hundred fifty and no/100 dollars ($350.00), which sum shall be paid and received as liquidated damages, such liability as herein set forth is fixed as liquidated damages and not a penalty and this liability shall be complete and exclusive.

---

**2.** *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

**3.** *See International Union UAW Local 119 v. Johnson Controls, Inc.,* 813 S.W.2d 558, 563 (Tex.App.—Dallas 1991, writ denied).

**4.** *Great Am. Reserve Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

In the event purchaser desires seller to assume greater liability for the performance of its services hereunder, a choice is hereby given of obtaining full or limited liability by paying an additional amount, proportioned to the responsibility, and an additional rider shall be attached to this agreement setting forth the additional liability of the seller and additional charge. The rider and additional obligation shall in no way be interpreted to hold seller as an insurer.

The monitoring contracts between Arthur's Garage and Racal–Chubb also contain a substantially similar provision. As a preliminary matter, we must decide whether the provision at issue is a liquidated damages provision or a limitation of liability provision.

 Generally, contractual provisions fixing liability at a specific amount or at a specified percentage of the service charge are categorized as liquidated damages provisions.[5] To enforce a liquidated damages clause, the court must find that: (1) the harm caused by the breach is incapable of being estimated or is difficult to estimate at the time of entry into the agreement, and (2) the amount of liquidated damages called for is a reasonable forecast of just compensation.[6] The failure of a court to find either of these elements renders a liquidated damages clause an unenforceable penalty for the breach of the contract.[7] On the other hand, a contractual provision setting an upper limit to the amount recoverable is considered a limitation of liability provision.[8] Limitation of liability provisions are not subject to a penalty analysis because, by their nature, they cannot be used to penalize a party for a breach of contract.

Here, although the provision at issue is entitled "liquidated damages," the provision limits Racal–Chubb's potential liability to $350. Because the provision sets an upper limit, it is a limitation of liability provision, and a penalty analysis is not applicable.[9] Therefore, to obtain summary judgment, Racal–Chubb was not required to prove the $350 damages limitation provided in the contract was a "reasonable forecast of just compensation."

Arthur's Garage also asserts that the limitation of liability is unenforceable as a matter of law on public policy grounds. Specifically, Arthur's Garage contends (1) it is against public policy to enforce such provisions in the face of its allegations of gross negligence and (2) enforcement of the provision "effectively works a recision of the contract" by freeing Racal–Chubb from performance under the contract. We disagree.

 An agreement to limit liability for future negligence is enforceable if the agreement does not violate public policy.[10] Generally, an agreement to limit liability will not violate public policy if there is no disparity of bargaining power between the parties.[11] Arthur's Garage has not asserted any disparity in the bargaining power between the parties. Moreover, the alarm contract provides Arthur's Garage could have obtained greater protection against losses by paying an additional amount commensurate with the level of protection desired. Thus, there appears to be no disparity of bargaining power between the parties.

Policy reasons also favor enforcement of terms limiting the liability of protective services companies such as Racal–Chubb. Under monitoring contracts such as the

---

**5.** See *Vallance & Co. v. De Anda*, 595 S.W.2d 587, 589 (Tex.Civ.App.—San Antonio 1980, no writ).

**6.** See *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex.1991).

**7.** See *id.*

**8.** See *Fox Elec. Co. v. Tone Guard Sec. Inc.*, 861 S.W.2d 79, 83 (Tex.App.—Fort Worth 1993, no writ).

**9.** See *id.*

**10.** *Id.* at 82–83.

**11.** *Id.* at 83.

one at issue in this case, the customer pays only a nominal fee for equipment and monitoring services.[12] Prohibiting an alarm company from contracting to limit its liability exposure would subject the alarm company to significant and uncertain risks that could vary widely depending on the contents of the building being monitored. Requiring alarm companies to take such risks would likely result in significant increases in the cost of providing monitoring services, which in turn would marginally reduce the number of persons who can afford such services.

Additionally, prohibiting limitation of liability clauses in monitoring contracts would engender additional litigation and higher administrative costs for providing monitoring services. Even without limitation of liability provisions, monitoring companies are liable only for the damages proximately caused by their breach they are not insurers. Unless the monitoring company somehow caused the fire, each loss would result in a dispute as to the amount of fire, smoke, or water damage that resulted inevitably from the fire, as opposed to those that would not have resulted but for the monitoring company's alleged breach. Monitoring companies would likely pass these additional administrative costs to their customers, resulting in increased prices and fewer customers.

Permitting alarm companies to limit their liability does not necessarily leave consumers unprotected. They may, and often do, purchase insurance to protect themselves and their property from fire and other hazards. Thus, we conclude the limitation of liability provision in Racal–Chubb's monitoring contract does not violate public policy prohibiting such limitations.

## B. DTPA Claims

Arthur's Garage next argues that because the DTPA specifically provides any waiver of its provisions is unenforceable, the limitation of liability clause is not effective against its DTPA claims.[13] In its petition, Arthur's Garage asserted Racal–Chubb violated the DTPA by: (1) making material misrepresentations; (2) engaging in unconscionable conduct or an unconscionable course of conduct; and (3) breaching express or implied warranties.

### 1. Non–Warranty Claims

The DTPA was enacted to protect consumers against "false, misleading, and deceptive business practices [and] unconscionable actions."[14] A consumer's waiver of any of the DTPA provisions is contrary to public policy and therefore void and unenforceable unless such waiver is in writing and complies with the requirements provided in section 17.42.[15] This "no waiver" provision applies to rights created by the DTPA.[16] Therefore, a limitation of liability clause is invalid insofar as it purports to waive liability for an act defined as "deceptive" under the laundry list of DTPA violations contained in section 17.46, which includes material misrepresentations.[17] Likewise, a limitation of liability clause does not limit recovery for an "unconscionable action or course of action" by Racal–Chubb.[18] Accordingly, we conclude the trial court erred in limiting Racal–Chubb's liability to $350 on Arthur's Garage's DTPA claims alleging Racal–Chubb made material misrepresentations

12. *See Vallance,* 595 S.W.2d at 590.

13. *See* TEX. BUS. & COM.CODE ANN. § 17.42(a) (Vernon Pamph.1999).

14. *Id.* § 17.44.

15. *See id.* § 17.42.

16. *See Southwestern Bell Tel. Co. v. FDP Corp.,* 811 S.W.2d 572, 576 (Tex.1991).

17. *See First Title Co. v. Garrett,* 860 S.W.2d 74, 77–78 (Tex.1993); *·Hycel v. Wittstruck,* 690 S.W.2d 914, 924 (Tex.App.—Waco 1985, writ dism'd).

18. *See Ciba–Geigy Corp. v. Stephens,* 871 S.W.2d 317, 322–23 (Tex.App.—Eastland 1994, writ denied); *Hycel,* 690 S.W.2d at 923–24.

or engaged in an unconscionable course of conduct.

■ We next address Racal–Chubb's second cross-point of error, which is conditioned on our finding the trial court erred in limiting liability on the DTPA misrepresentation claim. By this cross-point, Racal–Chubb asserts summary judgment is proper on this claim because there is no evidence of a causal link between any alleged misrepresentations and the damages sustained by Arthur's Garage. We recognize that, in the interest of judicial economy, we may consider additional grounds for summary judgment that were not specifically ruled on by the trial court if they are properly preserved for our review.[19]

■ Our review of the summary judgment motion shows Racal–Chubb did not raise a ground asserting the lack of a causal link between the alleged misrepresentations and the damages sustained. (Rather, Racal–Chubb sought summary judgment on the ground that Arthur's Garage was not aware of any misrepresentations by Racal–Chubb.) A motion for summary judgment must specifically state the grounds upon which judgment is sought.[20] Because Racal–Chubb did not assert lack of causation in its motion for summary judgment, it cannot now challenge the trial court's failure to grant summary judgment on this basis. Thus, Racal–Chubb has not properly preserved this ground for our review. We overrule Racal–Chubb's second cross-point of error.

## 2. Warranty Claims

■ Arthur's Garage also argues the trial court erred in limiting Racal–Chubb's liability to $350 on its express and implied warranty DTPA claims. As discussed above, the general rule is that the provisions of the DTPA cannot be waived or disclaimed; however, an exception to this "no-waiver" provision exists when a DTPA cause of action is predicated on breach of an express or implied warranty. In *Southwestern Bell Telephone Co. v. FDP Corp.*, the Texas Supreme Court concluded that limitation of liability clauses are enforceable if the DTPA has as its basis breach of an express warranty because the warranty becomes part of the basis of the bargain between the parties.[21] If the DTPA claim is based on an implied warranty deriving from common law or statutory sources, we must consider the source of the warranty to determine its nature and extent.[22] If the warranty is one that can be disclaimed under the law creating it, a limitation of liability clause does not offend the DTPA "no waiver" provision.[23]

■ Arthur's Garage predicated a DTPA claim on an alleged breach of an express warranty that Racal–Chubb's work or services would be performed in a good and workmanlike manner. Under *FDP Corp.*, any express warranties became part of the basis of the bargain between the parties; therefore, the limitation of liability clause is effective to limit Racal–Chubb's liability to $350 on this claim.[24]

■ Arthur's Garage also predicated a DTPA claim on Racal–Chubb's alleged breach of the implied warranty that its work or services would be performed in a good and workmanlike manner. While some implied warranties can be disclaimed,[25] the supreme court has expressly held that the implied warranty to repair or

19. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996) (stating that in interest of judicial economy, appellate courts may consider additional grounds for summary judgment that were properly preserved for review and not specifically ruled on by trial court).

20. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex.1993).

21. *See FDP Corp.*, 811 S.W.2d at 577.

22. *Id.* at 576–77.

23. *See id.* at 577.

24. *See id.*

25. *See id.*

modify existing tangible goods or property in a good and workmanlike manner may not be waived or disclaimed.[26] Therefore, we conclude the limitation of liability clause is not effective against Arthur's Garage's implied warranty DTPA claim.

However, this conclusion does not end our inquiry. Racal–Chubb has asserted in a cross-point of error that the trial court erred in failing to grant summary judgment on Arthur's Garage's breach of implied warranty claims because no implied warranty to "install and/or maintain" an alarm system exists in Texas and because no implied warranty arose because it never performed any work on the alarm system. Racal–Chubb raised these grounds for summary judgment in its motion; therefore, the issue has been preserved for our review.[27] Citing *Melody Home Manufacturing Co. v. Barnes*, Arthur's Garage responds that Texas does recognize an implied warranty to perform work in a good and workmanlike manner.[28]

We first address Racal–Chubb's argument that no implied warranty exists. We agree that Texas does not recognize an implied warranty to "install and/or maintain" an alarm system in a good and workmanlike manner as such. However, in *Melody Home*, the Texas Supreme Court recognized an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner.[29] Although the warranty does not require workers to guarantee the results of their work, it does require any repair or modification be performed in a good and workmanlike manner.[30] While this implied warranty extends to a broad range of repair and modification services,[31] it is not a warranty to perform *all services* in a good and workmanlike manner. The

supreme court has recognized the implied warranty only when the service performed relates to the repair or modification of existing tangible goods or property.[32] The implied warranty recognized in *Melody Home* is available to consumers suing under the DTPA.[33] Accordingly, we reject Racal–Chubb's argument that no implied warranty exists as a matter of law.

By this cross-point, Racal–Chubb also asserts it was entitled to summary judgment because the summary judgment evidence conclusively established it never performed any repairs or "service" on the alarm system. The summary judgment evidence shows Andrews originally installed the alarm system located in Arthur's Garage and contracted with Arthur's Garage to monitor and service the system. The monitoring contract, entitled "Alarm Signal Response Agreement," contains the following provision:

> It is the Subscriber's sole responsibility to carefully and properly set the alarm system and carefully test the alarm system periodically.... In the event any defect in the operation of the alarm system develops, Subscriber shall notify SYSTEMS [Andrews] and SYSTEMS [Andrews] will repair such defective condition in the normal course of business after the receipt of notice from the Subscriber. A preventative maintenance inspection will be made if requested by the Subscriber.

After acquiring Andrews, Racal–Chubb continued to service the existing contracts.

Trey West, manager of technical services for Racal–Chubb, stated in his affidavit that Racal–Chubb did not repair or modify the smoke detector located in Arthur's Garage. West's assertion is not

---

**26.** *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex.1987).

**27.** *See Cates*, 927 S.W.2d at 626.

**28.** *Melody Home*, 741 S.W.2d at 354.

**29.** *Id.* at 354.

**30.** *Id.* at 355.

**31.** *See Archibald v. Act III Arabians*, 755 S.W.2d 84, 85 (Tex.1988).

**32.** *See, e.g., Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 52–53 (Tex.1998); *Melody Home*, 741 S.W.2d at 354.

**33.** *See Melody Home*, 741 S.W.2d at 354.

disputed. Thus, because Racal–Chubb never repaired or modified existing tangible goods or property, Racal–Chubb could not have breached an implied warranty to perform such repairs or modifications in a good and workmanlike manner.[34] We conclude Racal–Chubb established its right to summary judgment in its favor on Arthur's Garage's common law and DTPA claims for breach of the implied warranty to perform repair services in a good and workmanlike manner. We sustain Racal–Chubb's first cross-point of error.

In so concluding, we do not address whether the implied warranty recognized in *Melody Home* requires that inspection services be performed in a good and workmanlike manner when a party contracts to "inspect and repair" existing tangible goods or property. Under the monitoring contract at issue in this case, Andrews (later Racal–Chubb) agreed to perform maintenance inspections *only if* requested by Arthur's Garage. Barbara Van der Vlies, an officer of Arthur's Garage, stated in her deposition that she never requested any repairs or maintenance on the smoke detector.

### C. Conclusion

In conclusion, we hold the trial court correctly granted summary judgment limiting Racal–Chubb's liability to $350 on Arthur's Garage's breach of contract, negligence, and common-law and DTPA breach of express warranty claims. We also conclude that Racal–Chubb proved as a matter of law that no implied warranty that repairs be performed in a good and workmanlike manner arose under the facts of this case and, therefore, summary judgment is also proper as to the common law and DTPA implied warranty claims. However, because the DTPA specifically provides that any waiver of its provisions is

unenforceable, the limitation of liability is ineffective against Arthur's Garage's DTPA claims based on misrepresentation and an unconscionable course of action. Accordingly, we sustain Arthur's Garage's first point of error in part and reverse the trial court's judgment with respect to Arthur's Garage's claims under the DTPA for misrepresentation and an unconscionable course of action.

### INDEMNITY PROVISION

■ In its second point of error, Arthur's Garage contends the trial court erred in granting Racal–Chubb's second motion for summary judgment because the indemnity provisions in the contracts do not meet the fair notice requirements of Texas law. Specifically, Arthur's Garage contends that the indemnity provisions do not meet either the "express negligence" test or the "conspicuousness" test.

■ Under Texas law, indemnity provisions are valid and enforceable if they satisfy two fair notice requirements.[35] First, under the express negligence doctrine, a party's intent to be released from all liability caused by its own future negligence must be expressed in unambiguous terms within the four corners of the contract.[36] Second, the clause must be "conspicuous" under the objective standard defined in the Uniform Commercial Code.[37] Section 1.201(10) of the Uniform Commercial Code provides:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non–Negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.[38]

---

34. *See Dallas Power & Light Co. v. Westinghouse Elec. Corp.*, 855 F.2d 203, 208 (5th Cir.1988).

35. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993).

36. *Id.; Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987).

37. *See* TEX. BUS. & COM.CODE ANN. § 1.201(10) (Vernon 1994); *Dresser*, 853 S.W.2d at 510–11.

38. TEX. BUS. & COM.CODE ANN. § 1.201(10) (Vernon 1994).

The purpose of the conspicuousness requirement is to protect the buyer from surprise and an unknowing waiver of his or her rights.[39] The question of compliance with both fair notice requirements is a question of law for the court.[40]

The indemnity provision in the alarm installation contract stated:

When purchaser, in the ordinary course of business, has the property of others in his custody, or the alarm system extends to protect the property of others, purchaser agrees to and shall indemnify, defend, and hold harmless seller, its employees and agents for and against all claims brought by parties other than the parties to this agreement. This provision shall apply to all claims, regardless of cause, including seller's performance or failure to perform, and including defects in products, design, installation, maintenance, operation or non-operation of the system, whether based upon negligence, active or passive, warranty, or strict product liability on the part of seller, its employees or agents, but this provision shall not apply to claims for loss or damage solely and directly caused by an employee of seller while on purchaser's premises.[41]

Contrary to Arthur's Garage's assertions, this provision clearly and specifically provides that it covers any negligence, breach of warranty, and strict product liability on the part of Racal–Chubb. We conclude the provision meets the express negligence test.[42]

The provision also meets the conspicuousness test. The provision is entitled "LIQUIDATED DAMAGES AND INDEMNITY," and the indemnity language is printed in capital letters immediately following the limitation of liability language, which also appears in capital letters. We conclude that a reasonable person against whom it is to operate ought to have noticed it.[43]

 Finally, Arthur's Garage contends the indemnity provision is unconscionable and therefore unenforceable and fact issues exist on whether Racal–Chubb took advantage of Arthur's Garage's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Specifically, Arthur's Garage contends that the indemnity provision is unconscionable because the provision was contained in a standard form contract and the summary judgment evidence shows Arthur's Garage received no value for the consideration it paid for the alarm system.

 Whether a contract is unconscionable is a question of law for the court to decide.[44] "Unconscionability" has no precise legal definition because it is not a concept but a determination to be made in light of a variety of factors.[45] In general, the term "unconscionability" describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms.[46] Although no single test exists to determine if a contract is unconscionable, we begin with two questions: (1) How did the parties arrive at the terms in controversy; and (2) Are there legitimate commercial reasons which justi-

**39.** *Littlefield v. Schaefer*, 955 S.W.2d 272, 275 (Tex.1997).

**40.** *Dresser*, 853 S.W.2d at 509.

**41.** The indemnity provision in the monitoring contracts is substantially identical to the provision in the installation contracts. The only difference is that, in the monitoring contracts, the word "subscriber" is used instead of the word "purchaser."

**42.** *See Ethyl Corp.*, 725 S.W.2d at 708.

**43.** *See* Tex. Bus. & Com.Code Ann. § 1.201(10) (Vernon 1994).

**44.** *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex.App.—San Antonio 1996, no writ); *Wade v. Austin*, 524 S.W.2d 79, 85 (Tex.Civ.App.—Texarkana 1975, no writ).

**45.** *Pony Express*, 921 S.W.2d at 821.

**46.** *Id.*

fy the inclusion of those terms? [47] The first question, described as the procedural aspect of unconscionability, is concerned with assent and focuses on the facts surrounding the bargaining process. [48] The second question, described as the substantive aspect of unconscionability, is concerned with the fairness of the resulting agreement. [49]

We have reviewed the indemnity provision in light of the foregoing considerations. Although the indemnity provision is contained in a standard form contract, the contract provides that Arthur's Garage could have obtained a higher limitation of liability for an increase in fees. Presumably, during the bargaining process, Arthur's Garage considered and rejected this additional protection. We conclude the contract does not overly favor one party in the transaction. Further, there are legitimate commercial reasons for including an indemnity provision in this contract. As previously discussed, Arthur's Garage paid fifty-one dollars per month for monitoring services. Normally, alarm companies base monthly monitoring fees on the price of the equipment and monitoring services and not on the value of the property being protected. [50] Arthur's Garage was in a better position to insure the property under its protection. After considering the totality of the circumstances, we conclude the indemnity provision is not unconscionable. We overrule Arthur's Garage's second point of error.

## AWARD OF EXPENSES

■ In its third point of error, Arthur's Garage contends that the trial court

erred in awarding Racal–Chubb $952.57 in expenses over and above its award of attorney's fees. Racal–Chubb argues that Arthur's Garage waived any complaint about the trial court's award of expenses because it failed to object in the court below.

■ We first address Racal–Chubb's waiver argument. To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling sought. [51] To preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method. [52]

■ The trial court signed the final judgment on January 30, 1996. On February 29, 1996, Arthur's Garage filed its "Motion to Correct, Modify or Reform Judgment, for Reconsideration and for New Trial." In this motion, Arthur's Garage requested the trial court to modify its final judgment to delete the award of $952.57 in expenses because such expenses were not recoverable as a matter of law. We conclude that for appellate purposes, Arthur's Garage preserved its complaint that the trial court erred in awarding expenses. [53] Accordingly, we now turn to the merits of Arthur's Garage's complaint.

■ A party may recover attorney's fees only if permitted by contract or statute. [54] However, ordinary expenses incurred by a party in prosecuting or de-

---

47. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 498–99 (Tex.1991) (Gonzalez, J., concurring); *Pony Express,* 921 S.W.2d at 821.

48. *DeLanney,* 809 S.W.2d at 499 (Gonzalez, J., concurring); *Pony Express,* 921 S.W.2d at 821.

49. *DeLanney,* 809 S.W.2d at 499 (Gonzalez, J., concurring); *Pony Express,* 921 S.W.2d at 821.

50. *See Leon's Bakery, Inc. v. Grinnell Corp.,* 990 F.2d 44, 49 (2d Cir.1993).

51. *See* TEX.R.APP. P. 33.1.

52. *Willis v. Willis,* 826 S.W.2d 700, 702 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see also Holland v. Hayden,* 901 S.W.2d 763, 765 (Tex.App.—Houston [14th Dist.] 1995, writ denied) (motion for new trial is appropriate method for preserving error regarding alleged defect in final judgment).

53. *See Willis,* 826 S.W.2d at 702.

54. *New Amsterdam Cas. Co. v. Texas Indus., Inc.,* 414 S.W.2d 914, 915 (Tex.1967); *First Nat'l Bank v. Anderson Ford–Lincoln–Mercury, Inc.,* 704 S.W.2d 83, 85 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

fending a lawsuit cannot be recovered either as damages or as court costs in the absence of statutory provisions or usages of equity.[55]

The record shows the "expenses" included filing fees, courier fees, postage, telephone expenses, long distance charges, and fax charges. This Court has concluded that these expenses make up the overhead of a law practice, are considered as a component in setting hourly billing rates and reasonable fees, and may be recovered as a component of attorney's fees.[56]

The trial court found Racal–Chubb was entitled to recover its attorney's fees for defending the LaBarba lawsuit under the indemnity provision in the alarm contract. The trial court further found Racal–Chubb was entitled to its attorney's fees for prosecuting its counterclaim because Arthur's Garage breached the indemnity contract.[57] Neither section 38.001 of the civil practice and remedies code nor the indemnity provision in the alarm contract specifically provides for recovery of such expenses. Accordingly, we conclude the trial court erred in awarding Racal–Chubb expenses because there is no legal basis for the award. We modify the trial court's judgment on Racal–Chubb's indemnity claim to eliminate the $952.57 award of expenses.[58]

## CONCLUSION

For the foregoing reasons, we reverse that portion of the trial court's judgment granting Racal–Chubb summary judgment on Arthur's Garage's claims under the DTPA for (1) false, misleading, or deceptive acts under section 17.46 and (2) an unconscionable course of action under section 17.50(a)(3) and remand only those causes of action to the trial court.[59] We also modify the trial court's judgment to delete the trial court's award of $952.57 in "expenses." In all other respects, we affirm the trial court's judgment.

---

55. *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 626 (Tex.App.—Dallas 1987, writ denied).

56. *Id.* at 626–27.

57. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1997).

58. *See* Tex.R.App. P. 43.2.

59. *See* Tex. Bus. & Com.Code Ann. §§ 17.46, 17.50(a)(3) (Vernon 1987 & Pamph.1999).