Opinion issued January 27, 2011


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00300-CV

———————————

shay mcconnell, Appellant

V.

janet
mcconnell and stanely mcconnell, Appellees



 



 

On Appeal from the 311th District Court

Harris County, Texas



Trial Court Case No. 2001-48395

 



 

MEMORANDUM OPINION

Shay McConnell appeals the trial court’s order
granting specific performance of an extrajudicial visitation agreement in which
he agreed to allow his parents, Janet and Stanley McConnell, to have access to his
son, D.J.M.  In eight issues, Shay contends
that the trial court erred by granting specific performance of the 2007
visitation agreement, by denying his request for sanctions, by granting
sanctions against him, and by finding against him on his claim for fraud.  We conclude that Shay’s appeal of the trial
court’s denial of sanctions against Janet and Stanley was not preserved, that
his appeal of sanctions entered by the trial court against him is moot, that he
inadequately briefed his argument that the 2007 agreement is unconstitutional,
that presumed findings of fact support the trial court’s implied rejection of Shay’s
contract defenses, and that presumed findings of fact support a judgment
against Shay on his fraud claim.  We affirm.

Background

D.J.M lived with his father, Shay (“the father”), and his
father’s parents, Janet and Stanley (collectively, “the grandparents”).  D.J.M.’s mother was not part of his life at
any time relevant to this suit.  The grandparents
helped raise D.J.M.: they took him to school, fixed meals, took care of him
when the father was at work or at school, and attended Grandparents Day events.

In May 2007, the father moved out of the grandparents’ house,
taking D.J.M. with him.  The father left
some of his and D.J.M.’s possessions in the grandparents’ house.  Janet testified that the father cut off all
contact between the grandparents and D.J.M. except for one phone call.  The father testified that he permitted the
grandparents to speak to D.J.M. on the phone and allowed limited contact by
mail.  The father testified that he
reduced contact between D.J.M. and his grandparents because he “believed that
it would help transition [D.J.M.] into a new home . . . [and] very
much because [he] was still angry with them.”

In an effort to reunite with D.J.M., the grandparents asked John
Mara, the attorney who represented the father during the original custody
proceedings concerning D.J.M, to serve as a mediator between the parties.  Although at the time, the father believed that
Mara was acting as a mediator, he now disputes whether Mara acted impartially.  The father testified that the possibility of
the grandparents filing a lawsuit was raised several times and that he could
not afford litigation.  The parties
eventually executed a document titled “Agreement for Visitation and Access to
the Child” on September 13, 2007 (“the 2007 agreement”).  Among numerous other provisions, the document
stated:

WHEREAS, the grandparents
and the father . . . acknowledge that the grandparents have had a
substantial and significant past contact with the child and are persons other
than foster parents who, long [sic] with the father, have had actual care,
control and possession of the child for at least six (6) months; and

WHEREAS, the grandparents
and the father desire to work out their differences regarding visitation with
the child through agreement rather than filing a formal suit affecting the
parent-child relationship and obtain a formal court order, for economic reasons
and further due to difficulty, expense and burden of locating the biological
mother for the child whom none of the parties hereto have heard from for over
five years; and

WHEREAS, the grandparents
and the father agree that this Agreement for Visitation and Access to the Child
. . . is in the best interest of the child.

The 2007 agreement was never made part
of a formal court visitation order. 
After the 2007 agreement was signed, the father reclaimed his and
D.J.M.’s possessions that had remained in the grandparents’ house.

The father and the grandparents performed in accordance with
this document until January 2009, when the father informed the grandparents
that he would no longer abide by the 2007 agreement.  He gave the grandparents a document that
stated in total:

This is to notify Bruce
and Janet McConnell that I, Shay McConnell, am of the belief that it is no
longer nor was it ever at any time beneficial to continue with visitation
between [D.J.M.] and his grandparents (Bruce and Janet) as decreed in the
written contract reached on September 13th, 2007.  It is from my priorly [sic] mentioned belief
that I base my decision to end mine and my son’s involvement in the visitation
outlined in the contract.  With my
decision to end the visitation I do offer Bruce and Janet McConnell the
opportunity to re-establish relations with my son and family in a more average
grandparent capacity.  Where-in they will
be able to interact with [D.J.M.] and the rest of my family as is convenient
for all involved parties.  As a
requirement of the re-establishment of a more average grandparent relationship
I do require that Bruce and Janet relinquish, in writing, the visitation given
to them in the contract reached on September 13th, 2007.

After giving the grandparents this
document, the father allowed the grandparents two supervised visits with
D.J.M.  The grandparents brought the
present lawsuit, seeking a modification of the original custody order or, in
the alternative, specific performance of the 2007 agreement.  The father answered, asserting a number of
contract defenses against the 2007 agreement as well as counterclaims for fraud
and conspiracy.

After the father informed the grandparents that he would no
longer abide by the 2007 agreement, the parties attempted mediation.  The mediation resulted in an agreement dated
March 5, 2009, that permitted the grandparents to see D.J.M. for four hours on the
first Sunday of every month (“the mediated agreement”).  The copy of the agreement in the record shows
that the parties modified the title from the original “Binding Mediated
Settlement Agreement” to “Mediated Settlement Agreement as to A Contract Only.”  The parties also struck the boldface, all-capitals
paragraph that declared that the mediated agreement was irrevocable and that
either party was entitled to judgment on the agreement under the Family Code.

During the pendency of the litigation, the father moved to
dismiss and for sanctions against the grandparents.  The trial court dismissed the modification
action and gave the grandparents a deadline of April 14, 2009 “to amend their
contract claim, if any.”  The trial
court’s order stated, “[A]ll other matters are held over.”  The grandparents submitted a “Second Amended
Petition to Modify Parent-Child Relationship” on April 14.  This pleading included a claim for breach of
contract with a request for specific performance of the 2007 agreement.

The grandparents sought to depose the father, who responded
to the grandparents’ notice by filing a motion for protective order within
three business days.  The grandparents
went forward with the deposition and filed a certificate of nonappearance with
the trial court in which the court reporter stated that the father did not
appear and that the costs to the grandparents’ attorney would be $150.  The appellate record includes a docket entry
from the associate judge in the case that indicates a sanction of $150 was
imposed against the father for his failure to appear.  

The trial court held a hearing on February 22, 2010, on the
grandparents’ claim for specific performance. 
After hearing testimony from Janet and the father, the trial court
granted specific performance of the 2007 agreement.  The trial court concluded that an order of specific
performance would not be “state action” so as to raise the constitutional presumption
that a fit parent should decide what is best for his child.  The trial court also observed that there were
matters about the contract that the parties should amend but concluded that it
did not have authority to alter a private agreement between the father and the
grandparents.  Finally, the court orally
ordered that the previous sanction order “be satisfied as costs.”

The
2007 Agreement

In his third, fourth, fifth, sixth, and seventh issues, the
father raises various challenges to the trial court’s order of specific
performance of the 2007 agreement.  He
asserts that enforcement of the 2007 agreement violates his authority as a
parent, that the 2009 mediated settlement agreement functioned as a novation of
the 2007 agreement, and that the trial court erred in impliedly rejecting his
contract defenses to the 2007 agreement.

A.      Standard of Review

Specific performance
is an equitable remedy, which rests within the sound discretion of the trial
court.  Smith v. Dass, Inc., 283 S.W.3d 537, 542 (Tex. App.—Dallas 2009, no
pet.).  The test for abuse of discretion
is whether the trial court “acted without reference to guiding rules and
principles.”  Id. (quoting Cire v. Cummings,
134 S.W.3d 835, 838–39 (Tex. 2004)).  We
will reverse the trial court only if its ruling is arbitrary or
unreasonable.  Id.

Because many of
these contract issues require a fact-based analysis, we observe that the trial
court did not enter findings of fact and conclusions of law and that the father
did not request that it do so.  Where the
trial court does not render findings of fact or conclusions of law, we assume
that it made all findings necessary in support of its judgment.  Pharo
v. Chambers Cnty., 922 S.W.2d 945, 948 (Tex. 1996).  If the trial court’s implied findings
are supported by the evidence, we must uphold the judgment on any theory of law
applicable to the case.  Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  In determining whether some evidence
supports the judgment and implied findings of fact, we consider only that
evidence most favorable to the issue and disregard entirely any contrary
evidence.  Id.

B.      Novation

In his third issue, the father contends that the 2009
mediated settlement agreement and the 2007 agreement are “inconsistent on their
face,” and that “the 2009 agreement, by novation, should have replaced [the
2007 agreement] as the current agreement.” 
The grandparents assert that we should imply a finding by the trial
court that the 2009 mediated settlement agreement was only temporary, pending
trial.  

The essential elements of a novation are (1) a previous,
valid obligation; (2) a mutual agreement of the parties to the acceptance of a
new contract; (3) the extinguishment of the old contract; and (4) the validity
of the new contract.  Beal Bank, S.S.B. v. Schleider, 124
S.W.3d 640, 653 at n.7 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  The father does not concede that the 2007
agreement was a valid obligation; however, assuming that it was, he asserts
that the evidence establishes the remaining elements.  The grandparents challenge the second and
third elements of novation, mutual agreement to the new contract and
extinguishment of the old contract.

Mediated settlement agreements are addressed by the Texas Family
Code.  A mediated settlement agreement is
binding only where it “provides, in a prominently displayed statement that is
in boldfaced type or capital letters or underlined, that the agreement is not
subject to revocation[.]”  Tex. Fam. Code Ann. § 153.0071(d)(1) (West
2009).  Here, the grandparents emphasize
that the boldfaced term “Binding” was crossed out of the heading of the 2009
mediated settlement agreement as was the boldfaced paragraph stating that each
party understood that the 2009 mediated settlement agreement was not subject to
revocation.  Further, the grandparents
observe that the trial court said to their attorney, “your position is that MSA
from March 5th, 2009 is at best and intended to be a Temporary Order in this
lawsuit and that all of the boldface language is crossed out in the
agreement.  So, I take it . . .
your position or your client’s position is that they are revoking this
agreement[.]”  The grandparents contend,
therefore, that the trial court necessarily found that the 2009 mediated settlement
agreement was intended to be temporary and not a permanent replacement for the
2007 agreement.

The father does not address the written alterations to the
2009 mediated settlement agreement.  Because
we imply all findings necessary to support the judgment, we conclude that the trial court must have found
that the alterations to the 2009 mediated settlement agreement indicated that
the grandparents did not agree that the 2007 agreement should be extinguished
or that the 2009 mediated settlement agreement should form a new contract.  Pharo,
922 S.W.2d at 948.  We hold that the father has not established
all elements of novation.  Beal Bank, 124 S.W.3d at 653, n.7.

We overrule the
father’s third issue.

C.      Contract
Defenses

In his fourth and
fifth issues, the father asserts a number of contract defenses against the 2007
agreement.  Specifically, in his fourth
issue, he asserts “unclean hands, including duress, fraudulent inducement,
mistake, and novation.”  In his fifth
issue, he asserts that the 2007 agreement was “on its face unconscionable and
against public policy.”  In his combined
discussion of these two issues, he also asserts that the 2007 agreement lacked
consideration and was a result of coercion. 


          1.       Unclean Hands

The father mentions
the equitable defense of “unclean hands” in his brief to this court, but the
case he cites does not discuss the doctrine, and we cannot discern any argument
applying the doctrine of unclean hands to the facts of this case.  We hold that the father’s bare assertion of
“unclean hands” does not present anything for our review and thus is waived as
a sub-issue to his contract challenges.  See Tex.
R. App. P. 38.1(i).  

2.       Duress and Coercion

The father asserts
two forms of duress:  economic duress, in
that he could not afford to defend against the grandparents’ threatened
lawsuit, and duress of property, in that the parents threatened to withhold his
and D.J.M.’s property if he did not signed the 2007 agreement.  The father also asserts that he was coerced
into signing the 2007 agreement because the grandparents threatened to sue him
when, according to the father, they lacked standing to do so.    

The father’s
economic duress and coercion defenses are based solely on the grandparents’
alleged threats to sue and his contentions that the suit was improper because
the grandparents lacked standing.  A
threat to sue is neither duress nor coercion. 
Cont’l Cas. Co. v. Huizar, 740
S.W.2d 429, 430 (Tex. 1987); McCloskey v.
San Antonio Traction Co., 192 S.W. 1116, 1120 (Tex. Civ. App.—San Antonio
1917, writ ref’d).  This is so even if
the claim asserted is wrongful or unlawful. 
Wright v. Sydow, 173 S.W.3d
534, 544 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing Cont’l Cas. Co., 740 S.W.2d at 430; Ward v. Scarborough, 236 S.W. 434, 437
(Tex. Comm’n App. 1922)).  We hold that as
a matter of law, the trial court did not abuse its discretion by impliedly rejecting
these defenses.  See Cont’l Cas. Co., 740 S.W.2d at 430; Wright, 173 S.W.3d at 544.

The father’s duress
of property defense is based entirely on his assertion that the grandparents
refused to turn over his and D.J.M.’s property until he signed the 2007
agreement.  While this claim comports
with the father’s testimony, D.J.M.’s grandmother told the trial court that the
father could have claimed the items at any time had he made prior
arrangements.  Because we imply all
findings of fact necessary to support the trial court’s judgment, we will
presume that the trial court credited the grandmother’s testimony and did not
believe the father.  See Pharo, 922 S.W.2d at 948. 
Having concluded that the trial court did not credit the sole evidence
in favor of the father’s duress of property defense, we hold that the trial
court did not abuse its discretion in impliedly rejecting that defense.

          3.       Fraud and Mistake

On appeal, the
father asserts that the 2007 agreement was invalid on grounds of fraudulent
inducement and fraud by non-disclosure or avoidable based on mutual mistake or
unilateral mistake.  He contends that
either the grandparents misrepresented their standing to sue him or they were
mistaken.  Having asserted that the
grandparents lacked standing to sue him in September 2007, he contends that the
primary consideration for the 2007 agreement was “meaningless” and was,
therefore, “voidable” by his communication to the grandparents in January 2009.

The elements of
fraud as a defense to breach of contract are:  (1) a material representation was made (2) that
was false, (3) that when the representation was made, the speaker knew it was
false or made it as a positive assertion recklessly without any knowledge of
the truth, (4) that the representation was made with the intention that it be
acted upon by the other party, (5) that the other party acted in reliance upon
the representation, and (6) that the other party suffered injury.  See
Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d
507, 524 (Tex. 1998).  Non-disclosure
fraud is a species of fraud where a party has a duty to disclose that renders
the failure to do so as misleading as a positive misrepresentation.  Schlumberger
Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997).  

“Pursuant to the
doctrine of mutual mistake, when parties to an agreement have contracted under
a misconception or ignorance of a material fact, the agreement will be
avoided.”  Myrad Props., Inc. v. LaSalle Bank Nat’l Ass’n, 300 S.W.3d 746, 751
(Tex. 2009) (quoting Williams v. Glash,
789 S.W.2d 261, 264 (Tex. 1990)).  “The
question of mutual mistake is determined not by self-serving subjective
statements of the parties’ intent, which would necessitate trial to a jury in
all such cases, but rather solely by objective circumstances surrounding
execution of the [contract].”  Id. 
Alternatively, we may set aside a contract based on a unilateral mistake
where “(1) the mistake is of so great a consequence that to enforce the
contract would be unconscionable; (2) the mistake relates to a material feature
of the contract; (3) the mistake occurred despite ordinary care; and (4) the
parties can be placed in status quo, i.e., the rescission must not prejudice
the other party except for the loss of the bargain.”  Ledig
v. Duke Energy Corp., 193 S.W.3d 167, 175 (Tex. App.—Houston [1st Dist.]
2006, no pet.) (internal quotation omitted).     

The only evidence
supporting the father’s claim that he misunderstood the merits of a potential
lawsuit at the time the 2007 agreement was negotiated is his own
testimony.  Presuming that the trial
court made all factual findings necessary in support of its judgment, we
conclude that the trial court did not credit the father’s testimony.  See Pharo, 922 S.W.2d at 948.  Without the father’s testimony that he did
not know about the grandparents’ standing to file a suit for possession or
access, there is no evidence of misrepresentation, omission, or mistake
respecting a material fact.  We,
therefore, hold that the trial court did not abuse its discretion by impliedly
rejecting the father’s fraud and mistake defenses.

          4.       Unconscionability

In his fifth issue,
the father asserts that the 2007 agreement is “incredibly one-sided, giving the
grandparents extensive rights and possession and access while giving [the
father] substantially nothing.”  He
further asserts that Mara’s participation in the negotiation of the 2007
agreement tainted the entire process. 
Thus, he contends that the 2007 agreement was both substantively and
procedurally unconscionable.[1]
   

“Unconscionability”
has no precise legal definition, and it is to be determined on a case-by-case
basis.  Arthur’s Garage, Inc. v. Racal-Chubb Sec. Sys., Inc., 997 S.W.2d
803, 815 (Tex. App.—Dallas 1999, no pet.); Besteman
v. Pitcock, 272 S.W.3d 777, 788 (Tex. App.—Texarkana 2008, no pet.).  In general, “unconscionability” describes a
contract that is unfair because of its overall one-sidedness or the gross
one-sidedness of its terms.  Arthur’s Garage, 997 S.W.2d at 815.  “Although no single test exists to determine
if a contract is unconscionable, we begin with two questions:  (1) How did the parties arrive at the terms
in controversy; and (2) Are there legitimate reasons which justify the
inclusion of those terms?”  Id. at 815–16.  The first question, which describes procedural
unconscionability, is concerned with assent and focuses on facts surrounding
the bargaining process.  Id. at 816.  The second question, which describes
“substantive unconscionability,” is concerned with the fairness of the
agreement itself.  Id.  “[A] contract or
contract provision is not invariably substantively unconscionable simply
because it is foolish for one party and very advantageous to the other.  Instead, a term is substantively unreasonable
where the inequity of the term is so extreme as to shock the conscience.”  Besteman,
272 S.W.3d at 789 (quoting Anaheim Indus.
v. GMC, No. 01-06-00440-CV, 2007 WL 4554213, at *9, (Tex. App.—Houston [1st
Dist.] Dec. 20, 2007, pet. denied)).   

Whether a contract
is unconscionable is a question of law.  Arthur’s Garage, 997 S.W.2d at 815.  However, the determination of the facts that
supposedly illustrate unconscionability is a question for the trial court.  Besteman,
272 S.W.3d at 788.  The party asserting
unconscionability must prove both procedural and substantive unconscionability.  In re
Green Tree Servicing, L.L.C., 275 S.W.3d 592, 603 (Tex. App.—Texarkana
2008, no pet.).

The father asserts
that procedural unconscionability is shown by the participation in the
negotiation of Mara, his former attorney from the original suit establishing
custody of D.J.M.[2]  The father’s testimony was the only evidence
supporting a finding of inequitable conduct in the process by which the 2007
agreement was reached.  We conclude that
the trial court must have disbelieved the father when he claimed that Mara’s
role was anything other than a mediator. 
There is, therefore, no evidence in support of the procedural prong of
our unconscionability analysis.  Arthur’s Garage, 997 S.W.2d at 815.  Because the father was required to establish
both prongs to be entitled to a judgment that the 2007 agreement was
unconscionable, see In re Green Tree,
275 S.W.3d at 603, we hold that the trial court did not abuse its discretion by
impliedly rejecting the father’s unconscionability defense.[3]

          5.       Lack of Consideration

The father contends
that the grandparents lacked standing to sue for access to D.J.M. at the time
the 2007 agreement was executed and that because they lacked standing, their relinquishment
of a right to sue amounts to no consideration.

The existence of a
written contract presumes consideration, and the burden was on the father to
disprove consideration.  Blockbuster, Inc. v. C-Span Entm’t, Inc.,
276 S.W.3d 482, 488 (Tex. App.—Dallas 2008, pet. granted) (citing Simpson v. MBank Dallas, N.A., 724
S.W.2d 102, 107 (Tex. App.—Dallas 1987, writ ref’d n.r.e.)).  The 2007 agreement stated that “in
consideration of Ten ($10.00) Dollars which is acknowledged as paid by the
grandparents and which is further acknowledged as received by the father, and
the further consideration of the mutual representations, agreements and
promises contained herein and other good and valuable consideration which is
acknowledged as received by the parties hereto, the grandparents and the father
agree[d]” to the terms of the agreement. 
The agreement further states that the parties “desire to work out their
differences regarding visitation with the child through agreement rather than
filing a formal suit affecting the parent-child relationship . . .
for economic reasons.”  However, the only
evidence that the father misunderstood the possible merits of any potential
suit that the grandparents could bring was the father’s own testimony.  The trial court was within its discretion to
disbelieve the father’s testimony, and because of the lack of findings of fact,
we presume that it did so.  See Pharo, 922 S.W.2d at 948.  Thus, we conclude that the trial court
credited the recitations of consideration in the 2007 agreement, and we hold
that the trial court did not abuse its discretion in rejecting the father’s
defense of lack of consideration.  See Blockbuster, 276 S.W.3d at 488
(citing Simpson, 724 S.W.2d at 107).

Having held that
none of the father’s contract-defense sub-issues shows an abuse of discretion
by the trial court, we overrule the father’s fourth and fifth issues.

D.      Parental
Presumption

In his seventh issue, the father contends that the trial
court erred by ordering specific performance because the 2007 agreement
“circumvent[ed]” his “parental presumption.” 
He directs our attention to the U.S. Supreme Court’s decision in Troxel v. Granville, a grandparent
visitation case.  530 U.S. 57, 120 S. Ct.
2054 (2000).  He argues that the trial
court failed to “accord at least some special weight to the parent’s own
determination” and that only he was empowered to determine when the
grandparents should have access to his child. 
See id. at 70, 120 S. Ct. at
2062.

Beyond merely stating the general holding of Troxel and citing one case from the El
Paso court of appeals, see Roby v. Adams,
68 S.W.3d 822, 828 (Tex. App.—El Paso 2002, pet. denied), the father has
neither briefed any argument nor cited any case applicable to the particular
issues in this case.  Specifically, he
has not attempted to explain with citations to the record and relevant
authority why an order of specific performance of an extrajudicial visitation
agreement crafted by the parties should be subject to the same constitutional
analysis applied to a statutory visitation order crafted by the courts.  We hold, therefore, that the father’s seventh
issue is waived due to inadequate briefing. 
See Stephens v. Dolcefino, 126
S.W.3d 120, 126 at n.5 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

The portion of the father’s brief referring to the “parental
presumption” purports to be a combined analysis of his sixth and seventh
issues.  The father’s sixth issue asserts
that the trial court erred by ordering specific performance of the 2007
agreement because the father “lawfully rescinded” it.  The father provides no argument or
authorities relating to rescission.  His
sixth issue, therefore, presents nothing for our review.  Tex.
R. App. P. 38.1(i).

We overrule the father’s sixth and seventh issues.

Sanctions

In his first and second issues, the father challenges the
trial court’s refusal to grant sanctions against the grandparents and its order
granting sanctions against him.

A.      Sanctions
Against the Father

In his first issue, the father contends that the trial court
erred by adopting the associate judge’s award of sanctions.  Specifically, the father contends that he
timely filed a motion for protective order objecting to the time and place of
the deposition, thereby automatically staying the deposition.  Thus, he asserts that he should not have been
sanctioned for failure to attend the deposition.  The grandparents contend that the absence of
a transcript of the hearing at which sanctions were imposed and the lack of any
objection to the trial court’s adoption of the associate judge’s award constitute
a failure to preserve this issue for appellate review.  The grandparents further argue that sanctions
are discretionary and may be appropriate even when there is a timely filed
motion for protective order.  Finally,
the grandparents assert that in the absence of findings of fact and conclusions
of law, we must imply all facts necessary to support the court’s ruling.

The trial court’s “Order In Suit For Specific Performance Of
Agreement” contains no mention of sanctions against the father and further states
that “all relief requested in this case and not expressly granted is
denied.”  On the other hand, in the
transcript of the February 22 hearing, the trial courts states, “The Court is
finding that there was a previously ordered sanction in this case, and I’m
ordering that that be satisfied as costs and paid on or before March
15th.”  In a civil case, when the oral
pronouncements of the trial court conflict with its written judgment, the
written judgment prevails.  Nine Greenway Ltd. v. Heard, Goggan, Blair
& Williams, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994,
writ denied).  The trial court’s written
judgment does not award sanctions.  Thus,
although the father’s first issue challenges the trial court’s award of a $150
sanction against him, there is no order of sanctions before us for our
review.  See Morton v. Paradise Cove Property Owners Ass’n, No.
11-08-00022-CV, 2009 WL 2841208 at *2 (Tex. App.—Eastland Sept. 3, 2009, no
pet. hist.) (mem. op., not designated for publication).

We overrule the father’s first issue as moot.

B.      The Father’s
Motions to Dismiss and for Sanctions

In his second issue, the father contends that the trial court
erred by failing to dismiss the grandparents’ Second Amended Motion to Modify
the Parent Child Relationship and by declining to sanction the
grandparents.  He contends that he was
entitled to sanctions under the Rules of Civil Procedure and the Civil Practice
and Remedies Code.  While the father’s
second issue purports to include a challenge to the trial court’s refusal to
grant his motion to dismiss, his discussion of that issue contains no argument
or authorities relating to that motion.  See Tex.
R. App. P. 38.1(i).  We,
therefore, will only address the father’s challenge to the trial court’s ruling
as to sanctions.

The father urges us to find that the trial court should have
sanctioned the grandparents under Rule 13 of the Rules of Civil Procedure and
under sections 9 and 10 of the Civil Practice and Remedies Code.  Tex.
Civ. Prac. & Rem. Code Ann. §§
9.011, 10.001–2 (West 2002); Tex. R.
Civ. P. 13.  We review a trial
court’s decision whether to impose sanctions under the foregoing provisions for
abuse of discretion.  Am. Flood Research, Inc. v. Jones, 192
S.W.3d 581, 582–83 (Tex. 2006); Cire,
134 S.W.3d at 838.  The test for whether
a trial court abused its discretion is whether it acted without reference to
guiding rules or principles.  Cire, 134 S.W.3d at 839.

In the father’s analysis, he relies solely on documents that
are not before us on appeal.  The father
directs our attention to “Shay McConnell’s First Amended Motion for Sanctions
Including Dismiss [sic] and Enforcement of Binding Agreement, attached in
Appendix A and part of the supplemental record.”  The record contains no such document, the
father has not provided this Court with any appendix to his brief, and even if the
father had filed an appendix, we may not consider documents that are not
formally included in the record on appeal. 
See Sowell v. Kroger Co., 263 S.W.3d 36, 38 (Tex. App.—Houston [1st Dist.]
2006, no pet.).  The father also refers
to events at a February 25, 2009 hearing for which there is no transcript; the
father cites only to the trial court’s handwritten docket entry as his record
citation.  This Court has held that a
docket entry “forms no part of the record we may consider; it is a memorandum
made for the trial court and clerk’s convenience.” Miller v. Kendall, 804 S.W.2d 933, 944 (Tex. App.—Houston [1st
Dist.] 1990, no writ) (citing Energo
Int’l Corp. v. Modern Indus. Heating, Inc., 722 S.W.2d 149, 151–52 (Tex.
App.—Dallas 1986, no writ)).  Further, the
father describes events at a court-ordered mediation for which there is no
record; he directs our attention to the mediated agreement, which does not
mention sanctions; and finally, he refers to the court’s “refus[al] to dismiss
or sanction Appellees,” citing again to the trial court’s docket sheet.

The only document in the record evidencing the father’s
motions to dismiss and for sanctions is the court’s order of May 1, 2009, that
dismisses the grandparents’ suit in part.[4]  The father does not refer to this document
under his second issue.  Furthermore, the
document does not describe the father’s motion. 
The record, therefore, contains nothing that shows that the father presented
the trial court with the arguments he now raises before this Court.  The record fails to show the trial court
abused its discretion by declining to sanction the grandparents.

We overrule the father’s second issue.

Fraud

In his eighth issue, the father contends that the trial court
erred by ruling against his affirmative fraud claim.  The father does not present any argument or
authorities for this issue but instead references his fourth and fifth issues,
which present his contract defenses to the 2007 agreement.  Where an appellant’s brief “does little more
than summarily state his point of error, without citations to legal authority
or substantive analysis, it is not sufficient to acquaint the Court with the
issue and does not present an argument that would allow the court to decide the
issue.”  Wheeler v. Methodist Hosp., 95 S.W.3d 628, 646 (Tex. App.—Houston
[1st Dist.] 2002, no pet.); see also Tex. R. App. P. 38.1.  We hold that the father has inadequately
briefed his eighth issue and that it is waived. 
See Wheeler, 95 S.W.3d at 646.

We overrule the father’s eighth issue.

Conclusion

We affirm the judgment of the trial court.

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Sharp.

 











[1]        In his statement of his fifth issue, the
father also suggests that the 2007 agreement is “against public policy.”  He has briefed no public policy argument, and
we, therefore, do not address that issue.

 





[2]        The father also asserts on appeal that the grandparents have more money and
education than he does, facts which have both been identified as possible considerations
in a procedural unconscionability analysis. 
See El Paso Natural Gas Co. v.
Minco Oil & Gas Co., 964 S.W.2d 54, 61 (Tex. App.—Amarillo 1998),
rev’d, 8 S.W.3d 309 (Tex. 1999).  We note
that El Paso Natural Gas does not
hold that financial or educational imbalance are necessary or sufficient
factors but only that they may be considered by the court.  We have found no evidence in the trial record
of the parties’ respective financial status or education level.

 





[3]        We do not reach the
substantive prong of the unconscionability test.  However, we note that while the trial court
did not issue findings of fact or conclusions of law, it did state for the
record its rejection of the father’s unconscionability argument:

Really it’s a bit disingenuous for the [father] to present that he was
victimized by this process, because if anybody was victimized by it, it was the
grandparents.  They’re the ones that
agreed to go along with this contractual process, and you could make the
argument that they put their legal rights and interest more in jeopardy than he
did by entering into this kind of an agreement.

 





[4]        The trial court’s order states, in relevant part:

On April 8, 2009 the
Court considered the Movant Shay McConnell’s Motion to Dismiss and Motion for
Sanctions and ORDERS that Motion to Dismiss is GRANTED in part as detailed
below and all other matters are held over.

IT IS ORDERED that the
Suit to Modify the Parent Child Relationship is dismissed, leaving only
Petitioner’s potential contract claims. 
IT IS FURTHER ORDERED that Petitioners have until 5:00 p.m. on April 14,
2009 to amend their contract claim, if any.

IT IS FURTHER ORDERED
that discovery response time for discovery propounded by Petitioners to
Respondent Shay McConnell will not begin to run until and unless Petitioners
amend their contract claims.  

The
grandparents filed their second amended petition on April 14, as directed by
the trial court.